UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY A. BAUSMAN,<br><br>    Plaintiff,<br><br>vs.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>    Defendant. | 1:14-cv-00900-AWI-GSA-PC<br><br>SCREENING ORDER<br><br>ORDER FOR PLAINTIFF TO EITHER:<br><br>  (1)  FILE AN AMENDED COMPLAINT NOT EXCEEDING 25 PAGES, OR<br><br>  (2)  NOTIFY THE COURT OF HIS WILLINGNESS TO PROCEED ONLY ON THE RLUIPA CLAIM FOUND COGNIZABLE BY THE COURT<br><br>ORDER DENYING MOTION FOR INJUNCTIVE RELIEF, FOR LACK OF JURISDICTION<br>(Doc. 3.)<br><br>THIRTY DAY DEADLINE TO FILE FIRST AMENDED COMPLAINT OR NOTIFY COURT |

**I.  BACKGROUND**

Barry A. Bausman ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983 and The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1.  On June 12, 2014, Plaintiff filed the Complaint commencing this action, which is now before the court for screening. (Doc. 1.)

**II.  SCREENING REQUIREMENT**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).

The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal 556 U.S. at 678.  While factual allegations are accepted as true, legal conclusions are not.  Id.

To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations to state a plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

**III.   SUMMARY OF COMPLAINT**

Plaintiff is presently incarcerated at the California Substance Abuse Treatment Facility and State Prison in Corcoran, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR), where the events at issue in the Complaint allegedly occurred.  Plaintiff names the CDCR as the sole defendant and proceeds against the CDCR in its official capacity.

The gravamen of Plaintiff's Complaint is that the CDCR implemented a Notice of Change of Regulations 13-01 ("NCR 13-01") on December 10, 2013, which he contends is

unconstitutional because it violates Plaintiff's and other Native American inmates' First Amendment rights to practice their Native American religion, by disallowing the possession and/or acquisition of religious artifacts and other items integral to participation in daily Native American cultural, traditional, ceremonial, and spiritual life. Plaintiff also claims that NCR 13-01 violates the Fourteenth Amendment's equal protection clause, because it favors conventional religions, such as Christianity and Islam, and one alternative religion, Wicca, that is predominately Caucasian in membership. In further violation of equal protection, Plaintiff alleges that NCR 13-01 fails to incorporate a grandfather clause for previously approved and acquired religious artifacts, whereas it grants such protection for inmates possessing non-religious items. Plaintiff also claims that NCR 13-01 violates the cruel and unusual punishment clause of the Eighth Amendment, because it allows institutional staff to threaten and instigate the confiscation and/or destruction of religious artifacts, items, and/or property.

Plaintiff requests injunctive relief via a court order finding NCR 13-01 unconstitutional, and ordering the state to rescind NCR 13-01 and amend it.

### IV.  PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).

#### A.  Free Exercise Claim – First Amendment

"Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (internal quotations and citations omitted). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an

inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. <u>Shakur v. Schriro</u>, 514 F.3d 878, 884-85 (9th Cir. 2008); <u>Freeman v. Arpaio</u>, 125 F.3d 732, 737 (9th Cir. 1997), overruled in part by <u>Shakur</u>, 514 F.3d at 884-85.

Plaintiff is entitled to a *reasonable* opportunity to practice his religion. <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972). The Constitution does not require prison officials to immediately accede to every request for accommodation that happens to be based in religion. "'Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" <u>Id.</u> (quoting <u>Price v. Johnson</u>, 334 U.S. 266, 285 (1948)). "In order to establish a free exercise violation, [a prisoner] must show the defendants burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." <u>Freeman</u>, 125 F.3d at 736. "In order to reach the level of a constitutional violation, the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.'" <u>Id.</u> at 737 (quoting <u>Graham v. C.I.R.</u>, 822 F.2d 844, 851 (9th Cir. 1987)).

Plaintiff fails to allege that the CDCR has no justification for the implementation of NCR 13-01 and in fact, Plaintiff's own exhibits show that the CDCR <u>does</u> have justification, as follows in the written statement of reasons for the changes to NCR 13-01:[1]

> "The Department weighed institutional security concerns against the interests of inmates in order to determine reasonable religiousproperty standards. Reasons for the religious property standards include, but are not limited to: (1) providing statewide standardization concerning allowable religious items for inmates, (2) compliance with existing court mandates, (3) reducing potential inmate litigation, (4) reducing the ability for inmates to barter or trade religious property, and (5) ensuring security and safety in the institutions." (Exh. M to Complaint at p. 114.)

///

---

[1] The court is not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint. See <u>Lovell v. Chandler</u>, 303 F.3d 1039, 1052 (9th Cir. 2002); <u>Steckman v. Hart Brewing</u>, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

For these reasons, the court finds that Plaintiff fails to state a cognizable First Amendment claim for violation of the Free Exercise Clause.

### B. RLUIPA Claim

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>
> (1) is in furtherance of a compelling government interest; and
>
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1.  To state a RLUIPA claim, a plaintiff must allege facts demonstrating that a defendant substantially burdened the exercise of his religious beliefs.  Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005).  In any RLUIPA claim, one must first identify the "religious exercise" allegedly impinged upon, and then must ask whether the prison regulation at issue "substantially burdens" that religious exercise.  Greene v. Solano County Jail, 513 F.3d 982, 987 (9th Cir. 2008).  The Ninth Circuit recently decided that a RLUIPA claim may not be maintained against prison officials in their individual capacities.  Wood v. Yordy, No. 12-35336, slip opinion at 3 (9th Cir. June 3, 2014).

The court finds that Plaintiff states a cognizable RLUIPA claim against defendant CDCR.

### C. Equal Protection Claim

The Equal Protection Clause requires that persons who are similarly situated be treated alike.  City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); Shakur, 514 F.3d at 891.  An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071,1082 (9th Cir. 2003), Lee v. City of

Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff claims that NCR 13-01 violates the Fourteenth Amendment's equal protection clause, because it favors conventional religions, such as Christianity and Islam, and one alternative religion, Wicca, that is predominately Caucasian in membership. Plaintiff also alleges that inmates who possess religious items are being treated differently from inmates who possess non-religious items such as keyboards, TVs and typewriters, because inmates with non-religious items are allowed to keep items that were procured before being disallowed, whereas NCR 13-01 does not incorporate a "grandfather clause" allowing inmates to keep previously approved religious artifacts and items.

Plaintiff fails to allege facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, or that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. Therefore, Plaintiff fails to state a claim for relief for violation of his right to equal protection.

### D.  Conditions of Confinement -- Eighth Amendment Claim

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the

plaintiff.  E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim.  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006).  "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation.  Id. at 731.

Here, the harm to Plaintiff does not rise to the level of an Eighth Amendment claim.  Moreover, Plaintiff fails to show that the CDCR implemented NCR 13-01 while knowing about, and deliberately disregarding, a substantial risk of serious harm to Plaintiff.  Therefore, Plaintiff fails to state an Eighth Amendment claim.

### E. Violation of State Law

Plaintiff brings state law claims against the CDCR for "establish[ing] and enforc[ing] a deadline that is prior to the rule-making hearing by which comments may be submitted for them to be considered by the agency." (Complaint, Doc. 1 at 15:26-28).  Plaintiff is informed that violation of state law is not sufficient to state a claim for relief under § 1983.  To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights.  See Paul v. Davis, 424 U.S. 693 (1976).  Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law.  See 28 U.S.C. § 1367.

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III [of the Constitution]," with specific exceptions.  "Pendent jurisdiction over state claims exists when the federal claim is sufficiently substantial to confer federal jurisdiction, and there is a 'common nucleus of operative fact between the state and federal claims.' "  Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995) (quoting Gilder v. PGA Tour, Inc., 936 F.2d 417, 421 (9th Cir.1991)).  "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary."

Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997).  The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

In this instance, the Court has found a cognizable RLUIPA claim against defendant CDCR.  Therefore, at this juncture, the Court shall exercise supplemental jurisdiction over Plaintiff's state law claims that form part of the same case or controversy as Plaintiff's cognizable federal claims.[2]

**IV.     MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

Plaintiff brings a motion for a "temporary restraining order, preliminary injunction, and protective order," which the court construes as a motion for preliminary injunctive relief. (Doc. 3.)  The purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined.  University of Texas v. Camenisch, 451 U.S. 390, 395 (1981).  A preliminary injunction is available to a plaintiff who "demonstrates either (1) a combination of probable success and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardship tips in its favor." Arcamuzi v. Continental Air Lines, Inc., 819 F. 2d 935, 937 (9th Cir. 1987).  Under either approach the plaintiff "must demonstrate a significant threat of irreparable injury." Id.  Also, an injunction should not issue if the plaintiff "shows no chance of success on the merits." Id.  At a bare minimum, the plaintiff "must demonstrate a fair chance of success of the merits, or questions serious enough to require litigation." Id.

Federal courts are courts of limited jurisdiction, and as a preliminary matter, the court must have before it an actual case or controversy. City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665 (1983); Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 471, 102 S.Ct. 752, 757-58 (1982); Jones v. City of

---

[2] At this stage of the proceedings, the court makes no determination about the viability of Plaintiff's state law claims.

Los Angeles, 444 F.3d 1118, 1126 (9th Cir. 2006). If the court does not have an actual case or controversy before it, it has no power to hear the matter in question. Id. Thus, "[a] federal court may issue an injunction [only] if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court." Zepeda v. United States Immigration Service, 753 F.2d 719, 727 (9th Cir. 1985).

Plaintiff seeks a court order enjoining the CDCR from enforcing NCR 13-01 or threatening, confiscating, or destroying Plaintiff's religious property. Plaintiff also requests the court to require the CDCR to rescind NCR 13-01 and maintain the previously approved policies and procedures for Plaintiff to order and receive religious property and artifacts. At this early stage of the proceedings, the court lacks personal jurisdiction over defendant CDCR in this case, because the CDCR has not been served with process or made an appearance in this action. The court may not attempt to determine the rights of persons not before the court. Therefore, Plaintiff's motion for preliminary injunctive relief must be denied.

## V. CONCLUSION

The Court has found that Plaintiff's Complaint states a RLUIPA claim against defendant CDCR. However, Plaintiff fails to state any other claims upon which relief may be granted under § 1983.

Plaintiff shall be required to either file a First Amended Complaint, or notify the court of his willingness to proceed only on the RLUIPA claim found cognizable by the court. Should Plaintiff choose to proceed only on the cognizable RLUIPA claim, the Court will begin the process to initiate service upon defendant CDCR.

Should Plaintiff choose to amend the complaint, the First Amended Complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). There is no *respondeat superior* liability, and each defendant is only liable for his or her

own misconduct.  Iqbal, 556 U.S. at 677.  Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights.  Jones, 297 F.3d at 934 (emphasis added).  Plaintiff should state clearly, in his own words, what happened and how each defendant's actions violated the particular right described by Plaintiff.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding allegations of events occurring or claims arising after June 12, 2014. Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).  In addition, Plaintiff should take care to include only those claims that were administratively exhausted before he filed the initial Complaint on June 12, 2014.

Given that Plaintiff must comply with Rule 8(a), which requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and based on the nature of Plaintiff's claims, twenty-five pages is more than sufficient for Plaintiff to identify his claims and set forth specific facts in support of those claims.  Accordingly, Plaintiff 's First Amended Complaint may not exceed twenty-five pages in length, and it will be stricken from the record if it violates this page limitation.

With respect to exhibits, while they are permissible, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).  The Court strongly suggests to Plaintiff that they should not be submitted where (1) they serve only to confuse the record and burden the Court, or (2) they are intended as future evidence.  If this action reaches a juncture at which the submission of evidence is appropriate and necessary (e.g., summary judgment or trial), Plaintiff will have the opportunity at that time to submit her evidence. Plaintiff is cautioned that it is not the duty of the court to look through all of his exhibits to determine whether or not he has cognizable claims.  Rather, the court looks to the factual allegations contained in Plaintiff's complaint to determine whether or not Plaintiff has stated a cognizable claim for relief.

If Plaintiff decides to file a First Amended Complaint, he is reminded that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907

n.1 (9th Cir. Aug. 29, 2012) (en banc), and it must be complete in itself without reference to the prior or superceded pleading.  Local Rule 220.  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:
   (1) File a First Amended Complaint not exceeding twenty-five pages, curing the deficiencies identified in this order, or
   (2) Notify the Court in writing that he does not wish to file an amended complaint and is instead willing to proceed only on the cognizable RLUIPA claim discussed above;
3. Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:14-cv-00900-AWI-GSA-PC;
4. Plaintiff's motion for preliminary injunctive relief, filed on June 12, 2014, is DENIED; and
5. If Plaintiff fails to comply with this order, this action will be dismissed for failure to comply with a court order.

IT IS SO ORDERED.

Dated:   **February 18, 2015**            **/s/ Gary S. Austin**
                                     UNITED STATES MAGISTRATE JUDGE