UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY A. BAUSMAN,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>　　　　Defendant. | Case No. 1:14-cv-00900-DAD-EPG-PC<br><br>**ORDER FOR PLAINTIFF TO EITHER:**<br><br>　**(1) FILE A SECOND AMENDED COMPLAINT NOT EXCEEDING 25 PAGES;**<br><br>　**(2) NOTIFY THE COURT THAT HE IS WILLING TO PROCEED WITH THE FIRST AMENDED COMPLAINT FOR A RLUIPA; OR,**<br><br>　**(3) NOTIFY THE COURT THAT HE STANDS ON THE FIRST AMENDED COMPLAINT AS FILED**<br><br>THIRTY DAY DEADLINE<br><br>(ECF No. 11) |

**I.　BACKGROUND**

　　Barry A. Bausman ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1.  On June 12, 2014, Plaintiff filed the Complaint commencing this action, which was dismissed with leave to amend.  (ECF No. 9.)  In the Order dismissing the Complaint, Plaintiff was instructed to file an

amended complaint of no more than 25 pages addressing the deficiencies in the Complaint. On March 9, 2015, Plaintiff filed a First Amended Complaint ("FAC"), along with nearly 700 pages of "exhibits." (ECF No. 11.) The Court notes that the FAC is substantially similar to the Complaint, although it has been updated to reflect new citations to the California Code of Regulations and elaborates on the theory of Plaintiff's equal protection claim.[1]

For the reasons described below, this FAC fails to state a claim based on constitutional rights because it names the CDCR only, and the CDCR is not a proper defendant for this type of claim. However, the Court gives Plaintiff leave to amend and notes that Plaintiff appears to state viable claims if they were asserted against a proper Defendant, who would be an individual person who was involved in depriving the Plaintiff of constitutional rights. The Court finds that Plaintiff's First Amended Complaint does state a claim against Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") against the CDCR. Plaintiff can now choose to go forward on the RLUIPA claim against the CDCR, can amend his complaint to add individual defendants consistent with instructions below, or can stand on his complaint and this Court will issue findings and recommendations consistent with this order to the District Judge.

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[1] The FAC and Complaint also appear to be substantially similar to a Complaint that was filed in the case *Villapondo v. Beard*, Case No. 1:14-cv-00823-LJO-DLB-PC. Several of the pleadings in that case also reference Plaintiff or declarations and appeals filed by Plaintiff. That case was dismissed without prejudice on a motion to dismiss on January 4, 2016.

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal* 556 U.S. at 678. While factual allegations are accepted as true, legal conclusions are not. *Id.*

To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.*

### III.   SUMMARY OF COMPLAINT

Plaintiff is presently incarcerated at the California Substance Abuse Treatment Facility and State Prison in Corcoran, California, in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), where the events at issue in the Complaint allegedly occurred. Plaintiff names the CDCR as the sole defendant.

The gravamen of the FAC is that the CDCR implemented a Notice of Change of Regulations 13-01 ("NCR 13-01") on December 10, 2013, which Plaintiff asserts is unconstitutional because it violates Plaintiff's and other Native American inmates' First Amendment rights to practice their Native American religion by disallowing the possession and/or acquisition of religious artifacts and other items integral to participation in daily Native American cultural, traditional, ceremonial, and spiritual life. He also alleges that NCR 13-01 violates the protections of RLUIPA because it places a burden on his ability to practice his religion. Plaintiff alleges that prison staff have informed him that they would begin to "actively seek out, confiscate and destroy any religious property" once the policy took effect. (FAC ¶ 6,

pg. 8, ECF No. 11.)

Plaintiff also claims that NCR 13-01 violates the Fourteenth Amendment's equal protection clause, because it favors conventional religions, such as Christianity and Islam, and one alternative religion, Wicca, which is predominately Caucasian in membership. In particular, Plaintiff contends that NCR 13-01 expands the number of approved items that other religions may possess, while contracting the number of items approved for Native American religious use. In further violation of the equal protection clause, Plaintiff alleges that NCR 13-01 fails to incorporate a grandfather clause for previously approved and acquired religious artifacts, while granting such protection for inmates possessing non-religious items.

Plaintiff requests injunctive relief via a court order finding NCR 13-01 unconstitutional and instructing the state to rescind or amend NCR 13-01.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).

### A. Sovereign Immunity

As an initial matter, the FAC names the CDCR as the sole defendant in this action. The CDCR is not a proper defendant. The Eleventh Amendment contains "a general bar against federal lawsuits brought against a state." *Wolfson v. Brammer*, 616 F.3d 1045, 1065-66 (9th Cir. 2010), *citing Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003) ("The Eleventh Amendment erects a general bar against federal lawsuits brought against a state. However, suits against a state official are an exception to this bar. Under the doctrine of *Ex Parte Young*, suits against an official for prospective relief are generally cognizable, whereas claims for retrospective relief (such as damages) are not."). While "[t]he Eleventh Amendment does not

4

bar suits against a state official for prospective relief," suits against the state or its agencies are barred absolutely, regardless of the form of relief sought. *Id.*; *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Buckwalter v. Nevada Bd. of Medical Examiners*, 678 F.3d 737, 740 n. 1 (9th Cir. 2012). This protection extends to the CDCR. *Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009) ("The district court correctly held that the California Department of Corrections and the California Board of Prison Terms were entitled to Eleventh Amendment immunity.").

Thus, to appropriately pursue his § 1983 claims alleging that his constitutional rights were violated, Plaintiff must seek only prospective injunctive relief against a state official in his or her official capacity. *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) ("[T]here is one exception to this general rule: When sued for prospective injunctive relief, a state official in his official capacity is considered a 'person' for § 1983 purposes."). While Plaintiff is seeking prospective injunctive relief because he seeks to require CDCR to rescind or amend the policies set forth in NCR 13-01, he has not named any individual state official as a defendant. The Court will thus provide Plaintiff with leave to amend the FAC and name an appropriate defendant for his § 1983 claims.[2] *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) ("Appellees correctly note on appeal that Lucas failed to name individual defendants in his complaint, and that his action, as currently written, is barred by state immunity.").

As Plaintiff considers whether to amend his complaint to allege a § 1983 claim against an individual, he is advised that "[l]iability under [§] 1983 arises only upon a showing of

---

[2] Plaintiff may, however, be able to pursue his RLUIPA claim against the CDCR, provided that he only seeks injunctive relief, rather than monetary damages. *Sossamon v. Texas*, 563 U.S. 277, 298 (2011) (Sotomayor, J., dissenting) ("In arguing that 'a waiver of sovereign immunity *to other types of relief* does not waive immunity to damages,' the majority appears to accept that equitable relief is available to RLUIPA plaintiffs."); *Oklevueha Native American Church of Hawaii, Inv. v. Holder*, 676 F.3d 829, 840 (9th Cir. 2012) ("The provision could be read as authorizing only injunctive relief, and therefore 'does not so clearly and unambiguously waive sovereign immunity to private suits for damages that we can 'be certain that the States in fact consents to such a suit.'"); *Rupe v. Cate*, 688 F.Supp.2d 1035, 1047 (E.D. Cal. 2010) ("Accordingly, the Court finds that RLUIPA requires state recipients of federal funds to waive immunity only as to suits for injunctive relief."); *Mauwee v. Donat*, Case No. 2:06-cv-00122-RCJ-VPC, 2009 WL 3062787, at *15 (D. Nev. Sept. 18, 2009) ("Although the Ninth Circuit has not ruled on the issue, the weight of authority in the sister Circuits overwhelmingly favors the conclusion that RLUIPA operates as a waiver of sovereign immunity as to equitable relief only.").

personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no *respondeat superior* liability under [§] 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Iqbal, 556 U.S. at 676; Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on *respondeat superior*, or vicarious liability. *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); *accord Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Lacey v. Maricopa County*, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Snow*, 681 F.3d at 989) (internal quotation marks omitted); *accord Lemire*, 726 F.3d at 1074-75; *Lacey*, 693 F.3d at 915-16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

This law should give the Plaintiff guidance in amending his complaint. If he chooses to file an amended complaint, it should name specific people who were directly involved in the decision to institute, implement and apply NCR 13-01 or otherwise directly deprive the Plaintiff of his constitutional rights.

### B. Free Exercise Claim – First Amendment

"Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (internal quotations and citations omitted). The protections of the Free

6

1  Exercise Clause are triggered when prison officials substantially burden the practice of an
2  inmate's religion by preventing him from engaging in conduct that he sincerely believes is
3  consistent with his faith. *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008); *Freeman v.*
4  *Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part by Shakur*, 514 F.3d at 884-85.
5  "The right to exercise religious practices and beliefs does not terminate at the prison door.  The
6  free exercise right, however, is necessarily limited by the fact of incarceration, and may be
7  curtailed in order to achieve legitimate correctional goals or to maintain prison security."
8  *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987).  "To prevail on [a] Free Exercise claim,
9  Plaintiffs must allege facts plausibly showing that the government denied them 'a reasonable
10 opportunity of pursuing [their] faith comparable to the opportunity afforded fellow prisoners
11 who adhere to conventional religious precepts.'" *Hartmann v. Cal. Dep't Corr. & Rehab.*, 707
12 F.3d 1114, 1122 (9th Cir. 2013).  A prisoner's free exercise rights may also be "limited by
13 'institutional objectives and by the loss of freedom concomitant with incarceration.'" *Id.*

14         Plaintiff alleges that he participates in a Native American Spiritual Circle ("NASC").
15 As part of this participation, members of the NASC use a variety of religious items for prayers
16 and other ceremonial purposes.  The policies enumerated in NCR 13-01, however, would forbid
17 the possession of many of these items.  It is unclear whether this policy has been implemented
18 or whether any items specifically in Plaintiff's possession have been seized or forbidden at this
19 point.  Plaintiff does allege, however, that prison staff have told him that they will be actively
20 enforcing this policy and will confiscate and/or destroy any prohibited items, if found.  Plaintiff
21 also contends that the list of approved items for "conventional" religions, such as Christianity
22 and Islam, has been expanded while the list of approved items for Native American spiritual
23 practices has been contracted.

24         These allegations are sufficient to state a claim that Plaintiff has been denied a
25 reasonable opportunity to engage in conduct that he believes is consistent with his faith.
26 For these reasons, the court finds that Plaintiff would state a cognizable First Amendment claim
27 for violation of the Free Exercise Clause if he were able to name a proper defendant who was
28 involved in issuing or implementing this policy.  As explained above, however, the claim is not

stated against a proper defendant at this time.

### C. RLUIPA Claim

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>
> (1) is in furtherance of a compelling government interest; and
>
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1. To state a RLUIPA claim, a plaintiff must allege facts demonstrating that a defendant substantially burdened the exercise of his religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994-95 (9th Cir. 2005). In any RLUIPA claim, one must first identify the "'religious' exercise allegedly impinged upon," and then ask "whether the prison regulation at issue 'substantially burdens' that religious exercise." *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 987 (9th Cir. 2008).

As with Plaintiff's free exercise claim, Plaintiff has plausibly alleged that the policies enunciated in NCR 13-01 place a substantial burden on the exercise of his religious activities, including the use of Native American religious items for participation in his NASC. The Court finds that Plaintiff states a cognizable RLUIPA claim and that it may be asserted against the CDCR.

### D. Equal Protection Claim

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); *Shakur*, 514 F.3d at 891. An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702-03 (9th Cir. 2009); *Serrano v. Francis*, 345 F.3d 1071,1082 (9th Cir. 2003), *Lee v. City of Los*

*Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff claims that NCR 13-01 violates the Fourteenth Amendment's equal protection clause in two ways. First, it favors conventional religions, such as Christianity and Islam, and one alternative religion, Wicca, which is predominately Caucasian in membership. In particular, Plaintiff alleges that NCR 13-01 "preserves and expands the new and previously approved items allowed to be possessed by those religions, while specifically omitting previously approved Native American cultural, traditional, ceremonial and spiritual artifacts and items." Second, Plaintiff alleges that inmates who possess religious items are being treated differently from inmates who possess non-religious items such as keyboards, TVs and typewriters, because inmates with non-religious items are allowed to keep items that were procured before being disallowed, whereas NCR 13-01 does not incorporate a "grandfather clause" allowing inmates to keep previously approved religious artifacts and items.

Each of these constitutes a separate basis for an equal protection claim. In the first instance, Plaintiff is asserting that he belongs to a protected class composed of followers of Native American spiritual beliefs and is arguing that he is receiving less favorable treatment compared to followers of Christianity, Islam, or Wiccan spiritual beliefs because the items they use receive fewer restrictions. In the second instance, Plaintiff is asserting that he belongs to a protected class composed of followers of Native American spiritual beliefs and is arguing that he is receiving less favorable treatment than all other inmates who use or possess *non-religious* items such as typewriters and televisions.

The first basis adequately alleges an equal protection claim because it alleges that similarly situated prisoners (*i.e.*, prisoners whose faith requires the use or possession of religious items) are being treated differently (*i.e.*, Native American adherents have access to

fewer items than Christian adherents). The second basis, however, does not allege an equal protection claim because it is not comparing groups that are similarly situated. The comparison between Native American adherents and all other inmates fails because Plaintiff's ability to keep religious items has no connection or relationship with the ability of other inmates to keep non-religious items.

Plaintiff thus alleges facts to demonstrate that he was intentionally treated differently than other similarly situated inmates. Therefore, Plaintiff would state a claim for relief for violation of his right to equal protection if he were to name a proper individual defendant. As with his free exercise claim, however, Plaintiff fails to name a proper defendant for this claim at this time.

### E. Violation of State Law

Plaintiff brings state law claims against the CDCR for "establish[ing] and enforc[ing] a deadline that is prior to the rule-making hearing by which comments may be submitted for them to be considered by the agency." A violation of state law is not sufficient to state a claim for relief under § 1983. To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. *See Paul v. Davis*, 424 U.S. 693 (1976). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. *See* 28 U.S.C. § 1367.

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III [of the Constitution]," with specific exceptions. "Pendent jurisdiction over state claims exists when the federal claim is sufficiently substantial to confer federal jurisdiction, and there is a 'common nucleus of operative fact between the state and federal claims.'" *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995) (quoting *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 421 (9th Cir.1991)). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). The Supreme Court has

cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

In this instance, the Court has found cognizable federal claims based on the facts in the FAC. Therefore, at this juncture, the Court shall exercise supplemental jurisdiction over Plaintiff's state law claims that form part of the same case or controversy as Plaintiff's cognizable federal claims.[3]

## V. CONCLUSION

The Court has found that the FAC states a RLUIPA claim against defendant CDCR. It also states state law claims, which can proceed in light of the federal RLUIPA claim. The FAC states other § 1983 claims, but only against the CDCR who is not a proper defendant.

Plaintiff may either (1) tell the Court that Plaintiff wants to proceed with the First Amended Complaint on the RLUIPA claim and state claims, (2) file a Second Amended Complaint adding proper individual defendants for the § 1983 claims, or (3) tell the Court that Plaintiff wishes to stand on the First Amended Complaint as filed.[4]

If Plaintiff chooses to file a Second Amended Complaint, that complaint will supersede the First Amended Complaint and the Court will screen the Second Amended Complaint in full. Should Plaintiff choose to file a Second Amended Complaint, it should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, *Iqbal*, 556 U.S. at 678; *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiff should state clearly, in his own words, what happened and how each defendant's actions violated the particular right described by Plaintiff. Plaintiff should name each defendant and explain what happened, describing personal acts by the individual defendant that resulted in the

---

[3] At this stage of the proceedings, the court makes no determination about the viability of Plaintiff's state law claim.

[4] If Plaintiff chooses to stand on the First Amended Complaint as filed, the Magistrate Judge will recommend dismissal, by the District Judge, of the claims found noncognizable in this order.

violation of Plaintiff's rights.  Plaintiff should also describe any harm he suffered as a result of the violation.  Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues.

Given that Plaintiff must comply with Rule 8(a), which requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and based on the nature of Plaintiff's claims, twenty-five pages is more than sufficient for Plaintiff to identify his claims and set forth specific facts in support of those claims.  Accordingly, Plaintiff's Second Amended Complaint may not exceed twenty-five pages in length, and it will be stricken from the record if it violates this page limitation.

The Court notes that Plaintiff has attached nearly 700 pages of exhibits to the FAC.  While exhibits are permissible, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading.  Fed. R. Civ. P. 8(a).  Moreover, the attachment of voluminous exhibits to a complaint serves only to confuse the record, burden the Court, and slow down the screening and review process.  ***Thus, in filing his Second Amended Complaint, Plaintiff should not attach exhibits or other documents unless they are essential to his claim.***  If this action reaches a juncture at which the submission of evidence is appropriate and necessary (*e.g.*, summary judgment or trial), Plaintiff will have the opportunity at that time to submit his evidence.

If Plaintiff decides to file a Second Amended Complaint, he is reminded that an amended complaint supersedes the original complaint, *Lacey v. Maricopa County*, 693 F. 3d 896, 907 n.1 (9th Cir. Aug. 29, 2012) (en banc), and it must be complete in itself without reference to the prior or superseded pleading.  Local Rule 220.  Once an amended complaint is filed, the prior complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office is DIRECTED to send Plaintiff a civil rights complaint form; and,

2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:

    a. Notify the Court in writing that he does not wish to file an amended complaint and is instead willing to proceed only on the RLUIPA claim against defendant CDCR, as well as state law claims; or,

    b. File a Second Amended Complaint no longer twenty-five pages curing the deficiencies identified in this order, in particular adding proper individual defendants;

    c. Notify the Court in writing that he stands on the First Amended Complaint as filed, in which case the Court will issue findings and recommendations to the United States District Judge assigned to this case consistent with this opinion.

Should Plaintiff choose to amend the First Amended Complaint, Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:14-cv-0900-DAD-EPC-PC. If Plaintiff fails to comply with this order, this action may be dismissed for failure to comply with a court order.

IT IS SO ORDERED.

Dated: **May 3, 2016**          /s/ Erica P. Grosjean
                                UNITED STATES MAGISTRATE JUDGE